UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAWTUCKET CREDIT UNION | ) | 3:20-CV-01847 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M/Y SEA RAYNA (OFFICIAL NO. | ) | |
| 1101693) & BRUCE S. BOZSUM | ) | SEPTEMBER 17, 2021 |
| *Defendants*. | | |

## <u>MEMORANDUM OF DECISION</u>
## RE: MOTION FOR DEFAULT JUDGEMENT, ECF NO. 13

Kari A. Dooley, United States District Judge:

Before the Court is Plaintiff-Pawtucket Credit Union's motion for default judgment. This lawsuit was brought to enforce a preferred ship mortgage against the *M/Y Sea Rayna*, Official No. 1101693, *in rem*, and against Bruce S. Bozsum, *in personam*. Plaintiff, as holder of the mortgage and underlying note secured thereby seeks a monetary judgment as well as an order that the *M/Y Sea Rayna* (the "Vessel") be sold at auction.

For the reasons set forth below, the motion for default judgement is GRANTED.

**Background & Procedural History**

Plaintiff filed its complaint on December 14, 2020, *in rem* against the Vessel and *in personam* against Bruce S. Boszum ("Boszum"). Seeking to enforce a preferred ship mortgage dated April 24, 2014, Plaintiff invoked this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 and 46 U.S.C. § 31325. Further, Plaintiff sought to designate the action as an admiralty or maritime claim pursuant to Fed. R. Civ. P. 9(h), which allowed the lawsuit to proceed following the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions.

When the Plaintiff filed the complaint, Plaintiff also filed a motion to arrest the Vessel and to appoint Yankee Boat Yard and Marine, Inc. as the substitute custodian for the vessel, which the Court granted on December 16, 2020. On December 21, 2020, the U.S. Marshal arrested the Vessel. On December 23, 2020, the U.S. Marshal also served Boszum, who is a not a Connecticut resident, by leaving a copy of the complaint with the Connecticut Secretary of State and by sending, via certified mail, a copy of the complaint to Boszum's home address.

A default for failure to appear and defend this action was entered on January 22, 2021. The instant motion for default judgment followed on February 5, 2021 and was thereafter supplemented on June 24, 2021. As set forth below, the motion is granted.

**Legal Standard**

A party moving for default judgment is entitled to have the court treat all the factual allegations in the moving party's complaint as true and draw all reasonable inferences in favor of the moving party. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). However, the court is still required to determine if the facts alleged by the moving party establish the defaulting party's liability as a matter of law. *Id.*; *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court retains discretion under Federal Rule of Civil Procedure 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . . .").

In a related vein, "[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must

be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." *Id.* (citing, among others, Fed. R. Civ. P. 55(b)(2)).

**Facts**

The allegations, deemed admitted, in summary are as follows. Around April 24, 2014, defendant Bozsum purchased the Vessel. In order to make the purchase, Bozsum obtained a loan from the Plaintiff in the amount of $99,064.00, which was secured by a Loan and Security Agreement (the "Note") as well as a First Preferred Ship Mortgage (the "Mortgage").

The Note, attached to the Complaint as Exhibit 3 and found at ECF No. 1-4, contemplates interest at a rate of 3.99% per annum, with Boszum committed to make 240 payments of $599.79. The Note provides that Boszum would default on the Note if he should either break any promise contained in the Note or if Plaintiff came to believe, in good faith, that the prospect of payment, performance, or the realization of the collateral became impaired. Once in default, the balance owed on the Note would become immediately due and payable. Further, the Note states that Plaintiff would be entitled to any "costs of collection" that Plaintiff may incur while seeking to obtain the funds owed. Those costs of collection include reasonable attorneys' fees, repossession fees, appraisal fees, and others.

The Mortgage, which was attached to the Complaint as Exhibit 4 and can be found at ECF No. 1-5, was recorded with the United States Coast Guard and gave Plaintiff a security interest in the Vessel. Under the Mortgage, failure to pay any sums due under the Note would be considered an event of default, and in the event of a default, Plaintiff would be entitled to declare all principal and interest due under the Note, to recover judgment for and to collect out of Boszum's property an amount equal to the amount due under the Note, and to retake the Vessel. The Mortgage also entitles Plaintiff to sell the Vessel should the need arise and specifies that all proceeds should be

applied first to the costs incurred by Plaintiff in protecting its rights and second to payment of what may be owed under the Note. Further, the Mortgage states that Plaintiff shall be entitled to collect any deficiency from the Defendant.

Finally, Plaintiff alleges that Bozsum is in default under the terms of the Note and Mortgage insofar as he failed to make payments due thereunder.

**Discussion**

Plaintiff brings its claims pursuant to the enforcement provision of the Ship Mortgage Act, 46 U.S.C. § 31325.

> Pursuant to 46 U.S.C. § 31325, a mortgagee may enforce a preferred mortgage on a vessel in two ways. First, the mortgagee may commence "a civil action *in rem* for a documented vessel." 46 U.S.C. § 31325(b)(1). This *in rem* action is filed against the *res*—in other words, the vessel. Therefore, any damages in an *in rem* action are limited to the parties' interest in the boat. *Bay Casino, LLC. v. M/V Royal Empress,* 20 F. Supp. 2d 440, 447–48 (E.D.N.Y. 1998) ("[T]he *in rem* action is filed against the *res,* the vessel—a maritime lien on the vessel being a prerequisite to an action *in rem.*") (citing *Belcher Co. of Alabama, Inc. v. M/V Maratha Mariner,* 724 F.2d 1161, 1163 (5th Cir. 1984)); *In re Metromedia Fiber Network, Inc.,* 299 B.R. 251, 271–72 (Bankr. S.D.N.Y. 2003) ("The concept of in rem jurisdiction is that the court has jurisdiction over property, a *res*, and is thereby empowered to adjudicate interests in the *res.*"); *see also Black's Law Dictionary* (4th ed. 1951) (*in rem* is defined as a "technical term used to designate proceedings or actions instituted against the thing, in contradistinction to personal actions, which are said to be *in personam.*").
>
> The second method of enforcing a preferred mortgage under the Ship Mortgage Act is by commencing "a civil action *in personam* in admiralty against the mortgagor ... for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness." 46 U.S.C.A. § 31325 (West). "As its name implies, the *in personam* action is filed against the owner personally." *Bay Casino, LLC.*, 20 F. Supp. 2d at 448. As such, unlike in an *in rem* action, if the proceeds of the sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the amount. *Id.* ("[I]n the *in personam* proceeding ... if the proceeds of the sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the amount."); *see also Wilmington Trust Co. v. M/V Miss B. Haven V,* 760 F. Supp. 2d 364, 366 (S.D.N.Y. 2010) ("It is settled that, by way of an *in personam* proceeding, the mortgagee is entitled to a deficiency judgment if the foreclosure sale does not satisfy its lien and costs.").

*Bank of the West v. Sailing Yacht Serendipity*, 101 F. Supp. 3d 238, 247–48 (E.D.N.Y. 2015).

Here, the Plaintiff seeks to enforce the Mortgage using both methods. The claims are brought *in rem* against the Vessel and *in personam* against Boszum. The Court first determines whether Plaintiff has successfully alleged liability.

*Liability*

Under either enforcement mechanism of the Ship Mortgage Act, the Court may order enforcement of the Mortgage if the Plaintiff can demonstrate that (1) it has a valid preferred mortgage under the Ship Mortgage Act, and (2) that Boszum defaulted under the terms of the Mortgage. *See Bank of the West*, 101 F. Supp. 3d at 248. "Under 46 U.S.C. § 31322, a preferred mortgage is a mortgage that (1) 'includes the whole of the vessel'; (2) 'is filed in substantial compliance with section 31321 of this title'; and (3) 'covers a documented vessel.'" *Id.* To meet the requirements of 46 U.S.C. § 31321 and be properly filed, a mortgage must (1) identify the vessel; (2) state the name and address of each party to the instrument; (3) state the amount of the direct or contingent obligations (in one or more units of account as agreed to by the parties) that is or may be become secured by the mortgage, excluding interest, expenses, and fees; (4) state the interest of the grantor, mortgagor, or assignor in the vessel; (5) state the interest sold, conveyed, mortgaged, or assigned and (6) be signed and acknowledged. *See* 46 U.S.C. § 31321(b); *see also Bank of the West*, 101 F. Supp. 3d at 248–49 (applying these six requirements). The Mortgage, which was attached to the Complaint as Exhibit 4, is a preferred ship mortgage as defined under 46 U.S.C. § 31322.[1]

---

[1] First, the Mortgage covers "the whole of the Vessel," as indicated on the first page of the mortgage. Second, the Mortgage meets the requirements of 46 U.S.C. § 31321 in all respects. The Mortgage (1) identifies the Vessel by name and official hull number; (2) states the name and address of both Pawtucket Credit Union and Bruce S. Boszum; (3) states that the principal amount due on the Note is $99,064.00; (4) states that Boszum is the owner of the Vessel; (5) states that Boszum mortgages "the whole of the Vessel" to Plaintiff; and (6) is signed an acknowledged. Finally, the Vessel is documented with the United States Coast Guard *See* Comp., Ex. 2., ECF No. 1-3.

The Court next looks to whether the allegations deemed admitted show that Boszum has defaulted on his obligations. *See Bank of the West*, 101 F. Supp. 3d at 248. Plaintiff's Complaint, Motion for Default Judgment, Supplemental Motion for Default Judgment, and the attachments to each of those submissions all demonstrate that Boszum has failed to make payments due under the Note since February 15, 2020. And as discussed above, his failure to do so is identified as an event of default under the Mortgage. Accordingly, liability to the Plaintiff under the Ship Mortgage Act is sufficiently established and the Mortgage may be enforced against the Vessel *in rem,* and against Bozsum *in personam*.

***Damages***

A court awarding a default judgment need not hold a hearing to determine damages when those damages can be "reasonably calculated" based on the submissions to the court. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Billybey Marina Services, LLC v. Affairs Afloat, Inc.*, No. 14-CV-6722 (SJ) (JO), 2016 WL 1266608, at *3–*4 (E.D.N.Y. Mar. 11, 2016) (finding that damages could be calculated with reasonable certainty for, among other things, enforcement of a maritime lien). Here, the amount of damages can be reasonably calculated based on Plaintiff's submissions. The Affidavit of Debt submitted with the Supplemental Motion for Default Judgment establishes that $80,838.26 is owed as principal on the Mortgage. (ECF No. 16-1.) This affidavit also indicates that, as of June 10, 2021, interest owed and custodial costs, which include those costs to maintain the Vessel, totaled $14,665.52, with interest accruing at a per diem rate of $8.60. Consequently, the total damages claimed by Plaintiff was $95,503.78 as of June 10, 2021. The Court finds these damages are adequately supported by the record. As 99 days have passed since June 10, 2021, the Court adds $851.40 to the amount awarded.

Plaintiff also makes a request for attorneys' fees and costs. The general rule that attorneys' fees and costs may be awarded if those fees and costs have been stipulated in a mortgage contract "has been applied without comment in numerous preferred ship mortgage foreclosure cases." *General Elec. Credit Corp. v. Oil Screw Triton VI*, 712 F.2d 991, 994 (5th Cir. 1983). Here, both the Note and Mortgage allow the Plaintiff to recover attorneys' fees and costs incurred by reason of a default under the Note and/or Mortgage. Courts in the Second Circuit determine whether an award of attorneys' fees is reasonable by "calculat[ing] a 'presumptively reasonable fee' by determining the appropriate billable hours expended and 'setting a reasonable hourly rate, taking into account all case-specific variables.'" *Lilly v. City of New York*, 934 F.3d 222, 229–230 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also DiPippa v. Fulbrook Capital Management*, No. 3:19-CV-01386 (KAD), 2020 WL 1940759 (D. Conn. Apr. 22, 2020) (referring to this process as a lodestar calculation). A presumptively reasonable rate is one that "a paying client would be willing to pay," both with the understanding that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and with the presumption that such a client will normally hire counsel from within his district who charges the prevailing rate within that district. *See Arbor Hill*, 522 F.3d at 190–91. Rate deviations can be made if they would be reasonable under the circumstances, a consideration that includes looking at the factors in *Johnson v. Georgia Highway Express*. *See Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989))). Further, after a district court calculates the presumptively reasonable fee by multiplying the billable hours by the presumptively reasonable rate, the court "may, in extraordinary circumstances, adjust the presumptively

7

reasonable fee when it 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *Lilly*, 934 F.3d at 230 (quoting *Millea v. Metro-North R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)). *See also Lebetkin v. Giray*, --- F. App'x ---, 2021 WL 2965323, at *3 (2d Cir. July 14, 2021) (applying these fee calculation methods to a breach of contract case).

Plaintiff seeks $18,029.50 in attorneys' fees and costs. To support this claim, Plaintiff's counsel submitted an affidavit as well as a timesheet detailing the time spent and the work performed. Therein, Plaintiff's counsel indicates that he has practiced law for 39 years and that he is admitted in both Connecticut state courts and U.S. District Court. He also states that he spent 33.4 hours litigating this matter at a rate of $495 per hour for a total of $17,165.50 in attorneys' fees, to which he adds $864.00 in court costs to reach the total request of $18,029.50.

Counsel's affidavit is at odds with the timesheet. First, those who are mathematically inclined will observe that 33.4 hours times $495 per hour does not equal $17,165.50. And an inspection of the timesheet reveals that although the total time billed was indeed 33.4 hours, "KWB," the affiant, only worked 21.9 hours on this matter, while an unidentified person, "DMB," who charged $550 per hour, billed the remaining 11.5 hours. Combining these hours with these hourly rates results in the requested attorneys' fee award of $17,165.50. However, the Court cannot assess the reasonableness of the hours worked or the rate charged for work performed by "DMB." He or she is unidentified, and the Court therefore has no information regarding his or her qualifications.

That said, the Court takes no issue with the number of hours billed by the Affiant, nor does the Court take issue with his hourly rate. *See Navig8 Chemicals Asia Pte., Ltd. v. Crest Energy Partners, LP*, No. 15 Civ. 7639 (PAE), 2015 WL 7566866, at *2 (S.D.N.Y. Nov. 24, 2015)

(collecting cases discussing variable hourly rates throughout the Second Circuit). Although a relatively straightforward matter from a legal perspective, the case nonetheless required coordinating across several different channels to ensure that the Vessel was properly arrested and that a custodian was properly appointed. The timesheets show that counsel diligently pursued this matter and did not engage in redundant efforts.

Accordingly, the Court awards attorneys' fees in the amount of $10,840.50 plus costs of $864.00 for a total award of $11,704.50.

**Conclusion & Orders**

Having made the findings above, **IT IS ORDERED, ADJUDGED, AND DECREED**:

1. That judgment by default be entered in favor of the Plaintiff and against the Defendants.
2. That Plaintiff is entitled to recover $96,355.18 in principal, interest, and custodial costs, with post-judgment interest as permitted by law.
3. That Plaintiff is entitled to attorney's fees in the amount of $10,840.50 and court costs in the amount of $864.00 relating to the prosecution of this matter.
4. That the Clerk of the Court is directed to prepare and enter an Order of Final Judgment in favor of the Plaintiff in the amount of $108,059.68, with post-judgment interest as permitted by law.
5. That the U.S. Marshal take all steps necessary to sell, at public auction and subject to the Court's confirmation, the *M/Y Sea Rayna* (Official No. 1101693), her engines, tackle, equipment, rigging, dinghies, furniture, and appurtenances.
6. That upon confirmation of sale, the proceeds of the sale shall be applied: first, to the Marshal's expenses in conducting the sale; second, to any costs incurred by the substitute custodian for keeping the *M/Y Sea Rayna* in *custodia legis* during the

prosecution of this matter; and third, to satisfy the remaining amount owed pursuant to the judgment, in whole or in part as the case may be.

7. That prior to such sale Plaintiff shall provide actual notice to any relevant parties pursuant to 46 U.S.C. § 31325(d)(1).

8. That prior to such sale the Plaintiff give notice of the sale by advertising the same on any six days preceding the date of sale (excluding Sundays and holidays) in the Middletown Press, 2 Main Street, Middletown, Connecticut 06457, and to show in said notice the time and place where said sale will be conducted; to show in said notice that prospective bidders may, on application to the Marshal, and such times and in such manner as the Marshal may direct, board the *M/Y Sea Rayna* for the purposes of inspection thereof; to show in said notice that the said sale will be the highest and best bidder; and that the highest and best bidder will be required to deliver to the Marshal at the time of the sale, in certified check, money order, or cash earnest money amounting to at least ten percent (10%) of the bid price, the balance thereof to be paid by certified check or money order to the Marshal within ninety-six (96) hours of the Court's confirmation of sale.

9. That if the balance of the purchase price is not paid by the successful bidder within the time required, the deposit will be forfeited by the bidder and shall be deposited with the Registry of the Court to be applied to any claims against the *M/Y Sea Rayna*.

10. That Plaintiff may bid its judgment or any part thereof without tender of cash at the public sale of the *M/Y Sea Rayna*, provided that should Plaintiff's bid be the only one made Plaintiff shall provide the Court with an appraisal of the *M/Y Sea Rayna*'s value at the time it files a motion for confirmation of sale.

11. That Plaintiff, following the confirmation of sale of the *M/Y Sea Rayna*, shall be able to petition the Court for a modification of the Court's Order of Final Judgment to include any interest and costs, including attorneys' fees and costs, substitute custodian costs, and any fees owed to the U.S. Marshal.

12. That Plaintiff shall have the ability to petition the Court for a deficiency judgment against Defendant Boszum pursuant to 46 U.S.C. § 31325 should the proceeds from the sale of the *M/Y Sea Rayna* not satisfy the judgment of $108,059.68.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of September 2021.

                                           */s/ Kari A. Dooley*
                                           KARI A. DOOLEY
                                           UNITED STATES DISTRICT JUDGE